Sanford Kaplan, J.
The defendant is charged with a violation of 'section 1102 of the Vehicle and Traffic Law: “No person shall fail or refuse to comply with any lawful order or direction of any police officer or other person duly empowered to regulate traffic.”
The facts do not seem to be in dispute. Testimony adducéd at the trial shows that, on February 7, 1973, Marie Casucci was working as a school crossing guard on Route 22 in Miller-ton near the Webutuck Elementary School. She testified that the defendant stopped her vehicle on Route 22 at approximately 8:55 a.m. to discharge her children so that they might proceed along a drive to the school.
Casucci had told the defendant on at least two prior occasions not to stop her vehicle at that location to discharge her children. Casucci’s direction to the defendant was' based on her belief that the stopping of the vehicle created a dangerous situation.
Two issues must be decided here: (1) Is a school crossing guard a “person duly empowered to regulate traffic”; and (2) was school crossing guard Casucci’s order lawful?
It seems clear that a school crossing guard is empowered to regulate traffic: “ The duly constituted authorities of any city, town or village or any county police department may designate, authorize and appoint such a number of persons as such authority shall deem necessary, and at such salaries as such *409 authority shall deem advisable, as school crossing guards to aid in protecting school children going to and from school, and church crossing guards to aid in protecting persons going to and from places of worship, and for such purpose shall have power to control vehicular traffic within such municipality.” (General Municipal Law, § 208-a.)
Power to direct traffic necessarily means that authority to direct vehicle operators to do or not do certain things, provided that the order is lawful.
The next question is, of course, the meaning of “ lawful ” under section 11Ó2 of the Vehicle and Traffic Law. The prosecutor suggests in his memorandum that ‘ ‘ as long as the order given is one that does not require the operator to break the law, it is a lawful order.” I do not agree, because that could, in theory anywáy, subject the passing motorist to the slightest whim of the crossing guard.
It seems to me that the touchstone of lawfulness in situations such as these is reasonableness. The function of the school crossing guard is to protect school children going to and from school; she is not there to prove her self-importance. As long as her commands are reasonably designated to achieve the former and not the latter, they should be .upheld.
In this instance, the school crossing guard’s belief that the stopping of the defendant’s car created a potentially hazardous situation is supported by the facts. The defendant stopped her vehicle in the traveling lane, since there really is no parking lane at that point. This would prevent the free passage of other vehicles going in the same direction, unless, of course, they crossed into the oncoming lane.
Defendant cites People v. Dalton (205 Misc. 689), in support of her contention that the village is not empowered to delegate to a school crossing guard the “authority to establish ‘no standing zones ’ or ‘ school crossing ’ locations and that, in the absence thereof, there can be no lawful order to comply with such non-existent rules.”
I agree with defendant to the extent that the school crossing guard could not take it upon herself to put up “ stop ” signs, designate “no stopping or standing zones”, etc. I do not find any evidence that the crossing guard here attempted to designate and regulate traffic in the same manner as the police department in Dalton.
In Dalton, the police department, pursuant to the ordinance held invalid, had set up a pattern of traffic regulations applicable to all vehicles. In this case, we are concerned only with *410 the exercise of the school.crossing guard’s discretion in specific and, perhaps, isolated instances. The fact that she may have given the same order to the same person, or even other persons, more than one. time makes her direction no more invalid than if she stopped traffic more than once at the same location in order that the children might cross safely.
If it is the defendant’s contention that a peace officer or other person empowered to regulate traffic can give orders only pursuant to existing traffic regulatory devices, e.g. a “no stopping ” sign, then there would be no need for section 1102 of the Vehicle and Traffic Law. It seems to me that one of the purposes of that section is. to provide a means for the proper authority on the scene to exercise his or her responsibility reasonably and in a manner designated to accomplish a proper objective.
Accordingly; the defendant is found guilty.